(633 P.2d 1171)

No. 52,653

STATE OF KANSAS, *Appellee,* v. JAMES F. HARRIS, *Appellant.*

Opinion filed September 18, 1981.

*Harold E. Flaigle,* of Alkire, Clausing, Wilson, Wilson & Flaigle, P.A., of Wichita, for appellant.

*Jack Peggs,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before FOTH, C.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This is a direct appeal by James F. Harris from his conviction for fraud or cheating in obtaining food, lodging and other accommodations from an innkeeper.

Harris challenges the sufficiency of the evidence to prove that he obtained the accommodations by trick or deception, or false representation, statement or pretense with intent to defraud the owners thereof.

The evidence is sparse and undisputed. Evidence was introduced that Harris checked into the motel on June 7, 1980, and paid the first night's rent in advance. The following day, he paid $264.60 (one week's lodging) in advance. He paid an additional $200 on his bill on June 26.

No other material evidence was offered covering the period of time between Harris's check-in and approximately July 6, 1980 (except for statements made by Harris to a law enforcement officer). Testimony covering the period of July 6 through 9 came from an assistant manager who saw Harris once, on July 9, 1980. She testified that for three days prior to July 9 she had personally placed messages for Harris in an alphabetical file maintained behind the main lobby desk, and she turned on a light to the phone in Harris's room to indicate he had a message at the front desk. She testified Harris either had picked up one of the messages or had called for it. The message simply requested Harris to make payment on his unpaid bill. On July 9, at about 5:00 p.m., she helped dead bolt the door to Harris's room. Harris returned

from work at approximately 5:30 and inquired why he could not get into his room. He was informed that he owed $659.37 and he would not be allowed to enter the room until the money was paid. Harris told the assistant manager that he was to receive a paycheck the following day and he would pay then, but he was again denied admission into the room until he paid. He stated he would have to find some place to sleep and then he left the premises.

Harris gave his correct name and, as far as the witness knew, his correct address when he checked in. He became indebted to the motel within eight days after checking in and was still indebted for slightly more than $200 after making a partial payment of $200 on June 26, 1980. There was no evidence that the motel requested additional payments before approximately July 6. About 11:00 or 11:30 p.m. on July 9, when the assistant manager noticed a light on in the room Harris had occupied, she called the police. Upon entry into the room it was found that a window was open and all of Harris's clothing and personal property had been removed from the room. Harris was arrested about thirty minutes later at another motel where he had checked in and was taken to police headquarters where he gave a statement to an officer. Harris told the officer that he was employed at Boeing and was to receive a check in excess of $800 later that day (it was now the early morning hours of the 10th), and that a friend was also to repay a loan of $300 on the 10th. Harris admitted he had entered the motel room through a window and reclaimed his personal property so that he could change clothes. The defendant chose not to testify or present any evidence and no other evidence material to this appeal was offered by the State.

Harris was charged with and convicted of a violation of K.S.A. 36-206, which reads as follows:

"That any person who shall obtain food, lodging, or other accommodation at any restaurant, hotel, boardinghouse, apartment house, or rooming house by means of any trick, deception, or false representation, statement or pretense, with intent to defraud the owner or keeper thereof, if the value of such food, lodging, services or other accommodations be of the value of fifty dollars ($50) or less, and shall fail or refuse to pay therefor, such person shall be deemed guilty of a misdemeanor, and upon the conviction thereof shall be punished by a fine not exceeding one hundred dollars ($100), or by imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment; and if the value of such food, lodging, services or other accommodations be more than fifty dollars ($50) any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the state penitentiary for a term not exceeding five years."

The trial judge instructed the jury as to the elements of the offense, which instructions in pertinent part read:

"To establish this charge, each of the following must be proved:

. . . .

2.  That the defendant obtained the accommodations by means of trick, deception, or false representation, statement or pretense, which deceived the Holiday Inn who relied in whole or in part upon trick, deception, false representation, statement or pretense in furnishing the accommodations;
3.  That such trick, deception, or false representation, statement or pretense was accomplished by defendant with the intent to defraud the Holiday Inn."

Harris and the State both assume the trial court correctly instructed the jury that the State must prove both an intent to defraud *and* that the defendant obtained the accommodations by means of trick or deception, or false representation, statement or pretense. Both parties take the position that a prima facie case of intent to defraud is presented by Harris's having surreptitiously removed his luggage and other personal property from the room. The State concedes it must prove that Harris intended to defraud prior to the accommodations being provided. We therefore express no opinion concerning whether the statutory presumption in K.S.A. 36-207 satisfies both elements, but note that in many instances the same fact or facts could prove both elements of the offense. The State further concedes that Harris did not expressly misrepresent any fact. The State argues, however, that the defendant *impliedly* held himself out as willing and capable of meeting his obligations, and that sufficient evidence existed by reason of Harris's failure to pay his bill for the jury to infer that he intended to defraud the motel when he registered as a guest.

We are of the opinion the State has suffered a failure of proof. It is not a crime to fail to pay a motel bill. Our Kansas Constitution prohibits any person being imprisoned for debt *except* in cases of fraud. Bill of Rights § 16. It is the fraud of the accused that constitutes the crime, not the failure to pay a debt, even if the accused unjustly and willfully refuses to pay his or her obligations.

When the record before us is considered in the manner in which we are required to view it (*State v. Racey,* 225 Kan. 404, 407, 590 P.2d 1064 [1979]), we are convinced the trial court erred in denying the accused's motion for judgment of acquittal. There is no evidence the defendant did anything that could be con-

strued as furnishing the intent to defraud an innkeeper prior to his being locked out of the motel room. The State relies on an incident that occurred after the lockout (removal of luggage and personal property from the room) to trigger the presumption afforded by K.S.A. 36-207 that Harris intended to defraud when he checked into the motel a month earlier. Harris agrees that act establishes a prima facie intent to defraud, and we therefore express no opinion concerning intent to defraud. The motel manager did have the right to lock Harris out of the room and hold his luggage and personal property. Harris also may have committed other crimes by removing his luggage and other property from the room. We are, however, unwilling to say that a jury should have been permitted to *imply* from the record before us that Harris obtained the accommodations by means of a trick or deception, or false representation, statement or pretense with the intent to defraud the owners or keeper of the motel when he obtained the accommodations. To hold otherwise would allow a jury to speculate and return a guilty verdict, thus enabling a debtor to be imprisoned for nothing more than the inability to pay a just debt on demand.

Reversed and remanded with directions to discharge the accused.